**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.R.-1, D.R.-2, J.R., and C.K.**

**No. 20-0729** (Barbour County 19-JA-21, 19-JA-22, 19-JA-23, and 19-JA-40)

**MEMORANDUM DECISION**

Petitioner Mother L.M., by counsel Hilary Bright, appeals the Circuit Court of Barbour County's August 19, 2020, order terminating her parental rights to D.R.-1, D.R.-2, J.R., and C.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Allison C. Iapalucci, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and in terminating her parental rights without considering a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and the father of D.R.-1, D.R.-2, and J.R. in February of 2019. The DHHR alleged that the parents engaged in domestic violence and that petitioner moved the children into the home of the father despite the existence of a protective order prohibiting contact between the father and petitioner and the children. The DHHR further alleged that petitioner and the father abused drugs, exposed the children to their own drug abuse as well as the drug abuse of acquaintances, and moved back and forth between Ohio and West Virginia to evade Child Protective Services ("CPS"). During the course of the investigation, petitioner submitted to a drug screen and tested positive for amphetamines, methamphetamine, benzodiazepine, and alcohol. In sum, the DHHR alleged that petitioner failed

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we refer to them as D.R.-1 and D.R.-2, respectively, throughout this memorandum decision.

to protect her children from drug abuse and domestic violence, was an unfit parent due to her drug addiction, and failed to provide the children with basic necessities.

The DHHR filed an amended petition in March of 2019, adding petitioner's oldest child, C.K., whom petitioner concealed from the DHHR by placing him with his biological father in Ohio. No allegations were brought against C.K.'s father, and the child was permitted to remain in his care. Petitioner waived her preliminary hearing. The circuit court granted petitioner supervised visitation with the children contingent upon her submitting negative drug screens.

In August of 2019, the guardian filed a motion to terminate supervised visits between petitioner and the children. The guardian alleged that petitioner remained on her phone throughout visits, made inappropriate promises to the children, and published social media posts about the children. On one occasion, petitioner made a video-call to an individual not approved by the multidisciplinary team ("MDT") and asked the children not to disclose the communication. Lastly, the guardian stated that she spoke to the children's therapist, who believed the therapeutic process was being hampered by petitioner's visits as the children continued to disclose trauma at the hands of petitioner. The circuit court granted the motion and suspended petitioner's visitation.

At an adjudicatory hearing held in December of 2019, petitioner stipulated to the allegations of abuse contained in the petition. Specifically, petitioner admitted to exposing the children to their father despite having obtained a domestic violence protective order against him, engaging in drug use, and exposing the children to inappropriate persons. Petitioner admitted to abusing drugs as recently as the day prior to the hearing. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and held her motion for a post-adjudicatory improvement period in abeyance in order to allow her additional time to demonstrate that she would comply with the same.

In August of 2020, the circuit court held a dispositional hearing. A DHHR worker testified that petitioner completed parenting and adult life skills classes and attended MDT meetings but moved to Ohio during the proceedings and failed to initiate any services or communication since that time. Petitioner tested positive for drugs on four occasions and failed to submit to numerous drug screens. Despite the requirement that she address her drug use, petitioner failed to attend an inpatient treatment program or otherwise address her drug use. The DHHR worker stated that petitioner had not seen her children since her visits were suspended due to her noncompliance with visitation procedures and that the children's therapist recommended that they not return to petitioner's care. Visitation was never reinstated due to petitioner's failure to consistently submit to drug screens. The worker further testified that petitioner was dishonest throughout the proceedings. For example, on one occasion petitioner told the MDT that she could not attend a meeting due to being in Ohio. However, mere hours later, petitioner was pulled over in a traffic stop in Barbour County, West Virginia. On another occasion, petitioner posted a picture on social media of one of the children present with her in a car, but denied it was her child and claimed it was a relative. The DHHR worker concluded that petitioner had made no improvement in remedying the conditions of abuse and neglect.

Petitioner testified that she relocated to Ohio during the proceedings to care for her ailing mother. She stated that she completed parenting and adult life skills classes and obtained

employment. Petitioner claimed that she was unable to comply with submitting to drug screens because she was unable to obtain a medical card in Ohio. Petitioner testified that she "thought about" seeking drug treatment but did not begin looking into outpatient rehabilitation programs until the day prior to the dispositional hearing. Petitioner claimed that she obtained housing but admitted that a "friend" was paying her rent. Petitioner denied that she was romantically involved with said friend, despite her social media posts indicating that the couple were engaged to be married. Petitioner conceded that her children should not have to wait for her to achieve stability.

After hearing evidence, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights. The circuit court found that petitioner failed to put the children first and failed to address her drug abuse. Petitioner failed to submit to drug screens, was not cooperative with the DHHR, and failed to maintain contact with her counsel. Further, petitioner was dishonest throughout the proceedings. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination was necessary for the children's welfare. Petitioner appeals the August 19, 2020, dispositional order terminating her parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her an improvement period when she demonstrated that she would comply with the same. According to petitioner, she acknowledged her deficiencies and complied with the services offered to her, including parenting and adult life skills classes. Petitioner also participated in all MDT meetings, save for one that she did not have notice of, and submitted to some drug screens. Petitioner notes that she also separated from the children's father, thereby addressing her issues with domestic violence. Petitioner further claims that she obtained housing and employment. Petitioner states that she inquired regarding

---

[2]The father of D.R.-1, D.R.-2, and J.R. voluntarily relinquished his parental rights below. The permanency plan for those children is adoption by their foster parent. The father of C.K. was considered a non-abusing parent during the proceedings below. The permanency plan for that child is to remain in his father's care.

outpatient treatment and began attending school. Given these displays of compliance, petitioner contends it was error to deny her an improvement period.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000)). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner avers that she made some improvements, the record shows that petitioner largely failed to comply with the services offered to her. Specifically, petitioner failed to establish that she would address her drug abuse. At the adjudicatory hearing, petitioner admitted to abusing drugs as recently as the day prior and affirmed that she would address her issues with drug abuse. However, petitioner tested positive for drugs on four occasions and then failed to submit to any other screens. Despite being advised that the DHHR could not provide her services outside of West Virginia, petitioner moved to Ohio and failed to take any significant steps to obtain services. Indeed, petitioner inquired about outpatient drug treatment only the day prior to the dispositional hearing. Moreover, petitioner failed to maintain contact with the DHHR and her attorney and was dishonest throughout the proceedings. In light of petitioner's failure to take any meaningful steps to remedy these issues despite the provision of some services, it is clear that petitioner was unlikely to fully participate in an improvement period, and we find no error in the circuit court's decision.

Petitioner also argues that the circuit court erred in terminating her parental rights. According to petitioner, there was insufficient evidence to support the circuit court's finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future. Therefore, petitioner contends that she should have been granted a less-restrictive alternative to the termination of her parental rights, such as disposition pursuant to West Virginia Code § 49-4-604(c)(5).[3] Petitioner argues that she remedied many of the allegations contained in the petition, completed services offered to her, and attended MDT meetings. Petitioner avers that her inability to continue with services in Ohio should not be attributed to her as a refusal or unwillingness to address certain deficiencies. Moreover, petitioner obtained housing and employment. Lastly, petitioner argues that, contrary to the findings of the circuit court, the children's permanency would not have been affected by granting an alternative disposition given their ages and placements.

_____

[3]West Virginia Code § 49-4-604(c)(5) provides as follows:

Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The evidence as set forth above likewise supports the circuit court's decision to terminate petitioner's parental rights. Here, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. Although petitioner was not granted a formal improvement period during the proceedings, she was offered services to help her remedy the conditions of abuse and neglect, and yet failed to satisfactorily comply. While petitioner completed parenting and adult life skills classes and attended MDT meetings, she failed to address her drug abuse. As noted above, the DHHR repeatedly informed petitioner that if she moved to Ohio it would be unable to assist her with services. Nevertheless, petitioner disregarded the recommendations of the MDT, moved to Ohio, and failed to submit to drug screens or seek drug treatment. Indeed, petitioner admitted that she called only one treatment program the day before the final hearing. Moreover, to the extent petitioner claims that she obtained employment and housing, we note that she never verified these claims with the DHHR. In fact, the circuit court found that petitioner's testimony regarding her housing situation and the alleged "friend" she lived with was not credible. Lastly, petitioner's visits with the children were suspended due to her refusal to comply with visitation procedures. Petitioner repeatedly posted about the children on social media, and the visits were not reinstated partly due to her failure to consistently submit to drug screens. Resultantly, petitioner did not see her children for more than one year. Accordingly, the evidence supports the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare.

Concerning petitioner's claim that she should have been granted a less-restrictive alternative to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 19, 2020, order is hereby affirmed.

5

Affirmed.

**ISSUED**:  March 16, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6